*Shimshon Wexler*
*1856 Berkeley Mews NE*
*Atlanta, GA 30329*
*Tel (212)760-2400*

***Via CM/ECF* on July 30, 2018**

Re:    Wexler v. Dorsey & Whitney, LLP, et al., Civil Action No. 1:18-cv-3066(RRM)(SJB)

Dear Judge Mauskopf:

I am the Plaintiff in this case and I write in response to Dorsey & Whitney LLP ("D&W") and Artin Betpera's ("Betpera") (collectively, the "Defendants") pre-motion letter [Doc. No. 14]. Taking the allegations of the Amended Complaint [Doc. No. 13] as true, as a Court must on a motion to dismiss, the claim for defamation stated against the Defendants is unassailable. As detailed extensively in the Amended Complaint, the Defendants' defamatory article on D&W's blog and Jdsupra includes several false and defamatory statements, including but not limited to that I (a) engaged in a major spousal scheme; (b) tried to conceal that I was married to the plaintiff from the Court; (c) engaged in unethical conduct known to the Defendants but not stated in the article; (d) falsely stated that I made clear that I intended to seek fees; and (e) tried to pull off an unethical scheme upon the Court and was succeeding until the Court was alerted to it and exposed my scheme (Comp. ¶¶20-33). In fact, paragraph 36 of the Amended Complaint alleges that after reading the D&W article, another author, who treated D&W's article as fact, wrote in their own article regarding D&W's article and stated, "having read [the defamatory] article, my only question is for how long did they think they could get away with it?"

One argument that Defendants have raised is that "the title of the article [] is a clear expression of the author's opinion" and thus not actionable. Then, the Defendants take the opposite position by arguing that the title of the article is not a clear expression of the author's opinion but is rather a true and accurate report of a Court decision. Of course, these two positions are completely discordant; and this just shows the weakness of the defendants' arguments. As shown below, the applicable case law holds that Defendants' arguments are completely meritless.

Even false statement about matters of public concern—and the case at bar is one of private concern— are entitled to no protection by the First Amendment:

Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity … Calculated falsehood falls into that class of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality … Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection. *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964).

The title of Defendants' article "TCPA Class Certification Denial Exposes Major Spousal Scheme" by stating "Major Spousal Scheme" and that it had been "Exposed" has only one meaning, namely that I engaged in a "Major Spousal Scheme" and that the scheme was "Exposed" by a court's decision. There is simply no other way to read the title of the article written by Defendants, nor have Defendants posited any other way in which the title of the article or the word "scheme" could possibly be read and understood in a way other than their plain meaning. Defendants admit on page 2 of their pre-motion letter that "[Defendants] included no information from any source other than the Court opinion." Thus, the Court's task is to decide whether the decision in the AT&T case which struck the class allegations (attached as Exhibit F to plaintiff's amended complaint) stated that it exposed a major spousal scheme. Defendants presumably meant what they said and intended their words to be understood in accordance with their plain meaning. In addition, Defendants' accusations are grounded in assertions of fact about my business activities, ethical standards, and practice of law as an attorney and are not framed in hyperbole, but rather purport to rely on a judicial opinion that establish the existence of my concerted "scheme."

Case law clearly establishes that Defendants' statements which falsely accuse a person of unethical activity and conduct by engaging in a "Major Spousal Scheme" are not expressions of opinion or hyperbolic language but rather expressions of facts which are capable of being true or false and thus actionable. In Restis v. American Coalition Against Nuclear Iran, Inc. 53 F.Supp.3d 705 (S.D.N.Y. 2014) the Court held that under New York law, alleged statements made by non-for-profit corporation, including that ship owner and shipping company engaged in a "scheme" to conduct business in Iran, were not incapable of being proven true or false, as required for statements to be actionable as defamation. Exactly like in Restis, Defendants' statements that myself and my wife engaged in a "scheme" are capable of being proven true or false. *See also,* Held v. Pokorny, 583 F.Supp. 1038, 1040 (S.D.N.Y.1984) (noting that while rhetorical hyperbole and vigorous epithets are expressions of opinion, "**[a]ccusations of criminal or unethical activity ... are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof**" (emphasis added); *see also* Trump v. Chi. Tribune Co., 616 F.Supp. 1434, 1435 (S.D.N.Y.1985) ("**[W]hen the criticism takes the form of accusations of** criminal or **unethical conduct**, or derogation of professional integrity in terms subject to factual verification, **the borderline between fact and opinion has been crossed**.") (emphasis added).

The Restis, Held, and Trump cases make clear that Defendants' accusations that I engaged in unethical activity, *i.e.,* a "Major Spousal Scheme", as well as their allegations relating to my professional integrity are susceptible of proof, and thus are actionable statements under New York defamation law. Exactly like in the Restis, Held and Trump cases, Defendants' statements falsely accusing me of engaging in a "scheme" with my spouse took the form of unethical conduct and derogation of my professional integrity. By alleging that I engaged in unethical activity and by derogating my professional integrity, "the borderline between fact and opinion has been crossed" (quoting, Trump, 616 F. Supp. at 1435) and Defendant's defamatory statements are clearly ones of fact and not opinion.

In Stega v. New York Downtown Hospital, 2018 NY Slip Op 4687 (2018) the NY Court of Appeals held that a statement that the plaintiff she "channeled funds" was not opinion and

therefore subject to a defamation claim because the context of the statement connoted illicit behavior even though technically true. The Court of Appeals made clear that "on a pre-answer motion to dismiss a defendant will prevail on this ground only if the statement's truth may be established from the complaint alone." Id at * 7. In this matter, the statement that I engaged in a "Major Spousal Scheme" clearly cannot be established from the complaint, and in fact, the amended complaint shows the opposite to be true. Stega further makes clear that "statement of opinion [that] implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, ... is a 'mixed opinion' and is actionable" Id. at * 7 (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (1986)). Like in Stega, Defendants' statements that I engaged in a "scheme" and the context of the article suggests to the average reader that their statements were based on facts undisclosed to the reader but known to Defendants. *See* Davis v. Boeheim, 24 N.Y.3d 262, 273 (2014)).

In Friedman v. Bloomberg L.P., 884 F.3d 83 (2d Cir. March 1, 2018) the Second Circuit held that statement that a former employee "repeatedly tried to extort money" from his former employer, did not constitute a substantially accurate description of employer's position in employee's lawsuit, and thus such statement was not absolutely privileged. Like in Friedman, Defendants statement that I engaged in a "scheme" with my wife related to the underlying TCPA lawsuit is not an accurate description of the Court's decision and thus the statement is similarly not privileged.

Defendants position is clearly wrong in light of the *Friedman*, *Stega* and *Restis* decisions.

As to Plaintiff's Lanham Act claim, Defendants statement was factual. Defendants' argument that the Lanham claim fails because they are not material to influence a potential clients decision to hire Plaintiff holds no water. As shown above, this is wrong as the Court exposing a major spousal scheme by Plaintiff will have a material impact on a consumer's hiring of a lawyer. At the very least, it is a question of fact. Lastly, Defendants argue that statements were not made in "commercial advertising or promotion" But this statement fails to give all inferences in favor of the complaint. The Amended Complaint alleges that the Defendants have a blog where they advertise their services and they write that one of the reasons you should hire them is because they know the tricks of plaintiff's lawyers and they provide an example of exposing an unlawful arrangement. (Amended Complaint paragraphs 10-15). If the article is not read in isolation, then it should be treated as advertising. At the very least it should be considered a hybrid communication and is actionable. *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 292-299 (S.D.N.Y. 2016).

The Amended Complaint alleges that Betpera using Dorsey, which is subject to personal jurisdiction in the Eastern District of New York, wrote an article about a Judge's decision in New York that substantially affects Plaintiff's law practice in New York and thus he should be subject to personal jurisdiction here. *World Wrestling Federation Entertainment, Inc. v. Bozell* 142 F.Supp.2d 514, 533 (S.D.N.Y. 2001). In any event, Plaintiff has made enough of a showing that he is entitled to jurisdictional discovery as to whether this Court has personal jurisdiction over Betpera. Should the Court find that it does not have personal jurisdiction over Betpera, Plaintiff requests that the Court transfer the action as to Betpera only to the Central District of California where Betpera resides.

*/s/ Shimshon Wexler*